**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SCOTT WAGNER,**

      **Petitioner,**                          **CASE NO. 2:10-CV-446**
                                                   **Judge Marbley**
      **v.**                               **Magistrate Judge King**

**WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY,**

      **Respondent.**

**ORDER and
REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. This matter is before the Court on the *Petition*, Doc. No. 1, Respondent's *Return of*

*Writ*, Doc. No. 7, Petitioner's *Traverse,* Doc. No. 19, Respondent's *Supplement to Return of Writ,*

Doc. Nos. 22, 33, Petitioner's *Supplemental Traverse*, Doc. No. 32, and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED.** Petitioner's request for an evidentiary hearing is **DENIED.**

**FACTS and PROCEDURAL HISTORY**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this

case as follows:

> On September 13, 2002, the Licking County Grand Jury indicted
> appellant on twenty-four counts of rape, twenty-seven counts of gross
> sexual imposition, one count of corruption of a minor and five counts
> of unlawful sexual conduct with a minor. On September 26, 2002, the
> grand jury indicted appellant on an additional six counts of rape, ten
> counts of gross sexual imposition and three counts of unlawful sexual
> conduct with a minor.
>
> The state moved to consolidate the two cases for trial. The trial court
> granted the state's motion on October 23, 2002. Thereafter, on
> January 31, 2003, the grand jury indicted appellant on four counts of

illegal use of a minor in nudity-oriented material or performance and fourteen counts of pandering sexually oriented material involving a minor. The indictment was consolidated with the previous two indictments.

All three indictments were the result of sexual offenses appellant committed against eleven boys between June 1, 1996 and August 31, 2002. Prior to the commencement of trial on July 8, 2003, the state moved to dismiss three counts of rape and one count of illegal use of a minor in nudity-oriented material or performance. Following deliberations, the jury convicted appellant of eighty-nine counts.

On August 14, 2003, the trial court conducted a classification hearing and classified appellant as a sexual predator. On this same date, the trial court sentenced appellant to an eighty-nine year term of imprisonment.

Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:

"I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE BASED ON THE UNAVAILABILITY OF COUNSEL, THEREBY DEPRIVING APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

"II. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S REQUEST FOR STATE FUNDS TO HIRE A CHILD PSYCHOLOGIST, THEREBY DEPRIVING APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

"III. THE TRIAL COURT COMMITTED PLAIN ERROR IN CONSOLIDATING ALL OF APPELLANT'S SEPARATE COUNTS AND INDICTMENTS FOR TRIAL, THEREBY DEPRIVING HIM OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE

2

PROVISIONS OF THE OHIO CONSTITUTION.

"IV. THE TRIAL COURT ERRONEOUSLY ADMITTED EVIDENCE OF POST-TRAUMATIC STRESS DISORDER IN THE ABSENCE OF ANY EXPERT TESTIMONY IN VIOLATION OF THE RULES OF EVIDENCE AND THUS DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

"V. THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING HEARSAY TESTIMONY OF INTERVIEWS CONDUCTED OF THE ALLEGED VICTIMS IN THIS CASE, THEREBY DEPRIVING APPELLANT OF HIS RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

"VI. THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING IRRELEVANT AND INADMISSIBLE EVIDENCE ABOUT PORNOGRAPHY AND OTHER MATERIALS SEIZED FROM APPELLANT'S RESIDENCE, THEREBY DEPRIVING APPELLANT OF HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

"VII. THE PROSECUTING ATTORNEY'S REMARKS DURING CLOSING ARGUMENTS CONSTITUTED PROSECUTORIAL MISCONDUCT AND PLAIN ERROR WHICH DEPRIVED APPELLANT OF A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

"VIII. THE FAILURES OF APPELLANT'S TRIAL COUNSEL CONSTITUTED INEFFECTIVE ASSISTANCE, THEREBY DEPRIVING APPELLANT OF HIS RIGHTS AS GUARANTEED

> BY THE SIXTH AMENDMENT TO THE UNITED STATES
> CONSTITUTION AND COMPARABLE PROVISIONS OF THE
> OHIO CONSTITUTION.
>
> "IX. THE TRIAL COURT ERRED IN RELYING ON
> UNRELIABLE TESTIMONY IN CLASSIFYING APPELLANT AS
> A SEXUAL PREDATOR PURSUANT TO R.C. 2950.09,
> THEREBY DEPRIVING HIM OF HIS RIGHT TO DUE PROCESS
> OF LAW AS GUARANTEED BY THE FOURTEENTH
> AMENDMENT TO THE UNITED STATES CONSTITUTION
> AND COMPARABLE PROVISIONS OF THE OHIO
> CONSTITUTION.
>
> "X. THE TRIAL COURT ABUSED ITS DISCRETION IN
> IMPOSING CONSECUTIVE SENTENCES ON APPELLANT, AS
> SUCH SENTENCES ARE CONTRARY TO LAW AND ARE NOT
> SUPPORTED BY THE RECORD FROM THE SENTENCING
> HEARING. R.C. 2953.08."

*State v. Wagner*, 2004 WL 1672200, at *1-2 (Ohio App. 5th Dist. July 26, 2004). On July 26, 2004, the appellate court affirmed Petitioner's convictions, but sustained his tenth assignment of error and remanded the case to the trial court for re-sentencing. *Id*. On December 15, 2004, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *Exhibit 14 to Return of Writ*.

On September 8, 2004, the trial court re-sentenced Petitioner to an aggregate term of eighty-nine years incarceration. *Exhibit 15 to Return of Writ*. Petitioner again filed a timely appeal, in which he asserted as follows:

> THE TRIAL COURT ERRED IN IMPOSING NON-MINIMUM,
> CONSECUTIVE SENTENCES ON APPELLANT WHERE THE
> FACTS NECESSARY TO IMPOSE SUCH A SENTENCE HAD
> NEITHER BEEN PROVEN TO A JURY NOR ADMITTED BY
> APPELLANT, THEREBY DEPRIVING APPELLANT OF HIS
> RIGHT TO A JURY TRIAL AND DUE PROCESS OF LAW AS
> GUARANTEED BY THE SIXTH AND FOURTEENTH
> AMENDMENTS TO THE UNITED STATES CONSTITUTION

4

AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

*See State v. Wagner*, 2005 WL 1785105, at *1 (Ohio App. 5th Dist. July 25, 2005).  On July 25, 2005, the appellate court affirmed the trial court's judgment.  *Id.*  The Ohio Supreme Court, however, accepted Petitioner's subsequent appeal, and

> remanded the case for resentencing pursuant to *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856. See, *In re Ohio Criminal Sentencing Statutes Cases,* 109 Ohio St.3d 313, 2006-Ohio-2109.

> Upon remand, the trial court again sentenced appellant to eighty-nine years in prison. See, Judgment Entry filed June 29, 2006.

> Following the granting of a motion for a delayed appeal, appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

> "THE COURT ERRED WHEN IT FAILED TO APPLY A PRESUMPTION IN FAVOR OF MINIMUM CONCURRENT SENTENCES, AND WHEN IT APPLIED CONSECUTIVE SENTENCES WITHOUT SUPPORTING FINDINGS FROM THE JURY. THESE ERRORS DEPRIVED THE DEFENDANT OF RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 5 AND 16, ARTICLE I, OF THE OHIO CONSTITUTION."

*State v. Wagner*, 2008 WL 5257223, at *1 (Ohio App. 5th Dist. Dec. 16, 2008).  On December 16, 2008, the appellate court affirmed the trial court's judgment.  *Id.*  On June 3, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *Exhibit 31 to Return of Writ*.

On March 13, 2009, Petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B).  He asserted that he was denied the effective assistance of appellate counsel

because his attorney failed to raise on appeal the following claims:

> 1.  The trial court erred by infringing upon the Appellant's right to obtain counsel of his own choosing when the trial court failed to timely return the Appellant's assets that were held in a receivership long after the need for the receivership had ended.

> 2.  The trial court erred in denying Appellant's motion for a continuance based upon counsel's late appointment and limited opportunity to review case, thereby depriving Appellant of his rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

> 3.  The failures of Appellant's trial counsel deprived him of his constitutional right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

*Exhibit 32 to Return of Writ*.  On June 15, 2009, the appellate court denied Petitioner's Rule 26(B) application.  *Exhibit 34 to Return of Writ*.  The Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *Exhibit 38 to Return of Writ*.

On May 20, 2010, Petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He alleges that he is in the custody of Respondent in violation of the Constitution of the United States based on the following grounds:

> 1.  A trial court errs in denying a proper motion for a continuance based on the unavailability of co-counsel due to illness.

> 2.  A trial court abuses its discretion in denying a request for state funds to hire a child psychologist to assist in trial preparation.

---

[1]  On September 6, 2006, this Court dismissed Petitioner's prior habeas corpus petition without prejudice as unexhausted.  *See Wagner v. Konteh*, Case Number 2:05-CV-1131, *Exhibits to Petition*.

3.   A trial court commits error in consolidating all of Petitioner' separate counts and indictments for trial where join[d]er is improper, where severance is necessary to avoid prejudice, and where evidence from one indictment is not admissible in the trial of the others.

4.   A trial court errs in admitting lay opinion testimony regarding post-traumatic stress disorder in a child sex abuse case.

5.   A trial court commits plain error in permitting hearsay testimony of interviews conducted of the alleged victims of child sex abuse.

6.   A trial court commits plain error in admitting irrelevant and inadmissible evidence about pornography and other materials seized from the Petitioner's residence.

7.   A prosecuting attorney's remarks during closing arguments constituted prosecutorial misconduct where she refers to facts that were not in evidence.

8.   The failures of Petitioner's trial counsel deprived him of his constitutional right to effective assistance of counsel.

9.   A trial court errs when it fails to apply a presumption in favor of minimum concurrent sentences, and when it applies consecutive sentences without supporting findings from the jury.

10.   A trial court errs in denying a proper motion for a continuance based on counsel's late appointment and limited opportunity to review case.

11.   The trial court erred by infringing upon the Petitioner's right to obtain counsel of his own choosing when the trial court failed to timely return the Petitioner's assets that were held in receivership long after the need for the receivership had ended.

12.   The failures of Petitioner's court appointed trial counsel deprived him of his constitutional right to effective assistance of counsel.

13. The failures of Petitioner's appellate counsel deprived him of his constitutional right to effective assistance of appellate counsel.

It is the position of the Respondent that Petitioner's claims are not cognizable in habeas corpus proceedings, are procedurally defaulted, or are without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural

forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

In claim four, Petitioner asserts he was denied a fair trial because the trial court improperly admitted the testimony of Michael Sanborn, Justin Carter, Matthew Carter, Nicholas Davis, and Morgan Garvin to the effect that the alleged victims suffered post traumatic stress disorder. In claim five, Petitioner asserts that he was denied a fair trial due to introduction of hearsay testimony from Stacey Saunders about her interviews with the alleged victims. In claim six, Petitioner asserts that he was denied a fair trial due to improper introduction of pornography evidence and items seized from his home. Petitioner raised all these claims on direct appeal, but the state apellate court reviewed the claims for plain error because Petitioner had filed to object at trial:

> Appellant contends. . . the trial court erroneously admitted evidence of post-traumatic stress disorder in the absence of any expert testimony. We disagree.
>
> Appellant maintains that throughout the state's case-in-chief, it introduced evidence that five of the eleven victims suffered psychological trauma as a result of appellant's abuse. Appellant argues evidence of the victims' post-traumatic stress disorder required correlation by expert testimony and improperly bolstered the witnesses' credibility. In support of this assignment of error, appellant cites *State v. Bidinost* 71 Ohio St.3d 449, 644 N.E.2d 318, 1994-Ohio–465. The *Bidinost* decision concluded the trial court properly admitted testimony, by an expert witness, regarding post-traumatic stress disorder.
>
> In the case *sub judice*, the record reveals defense counsel did not

object to the introduction of this testimony. Therefore, we must analyze this assignment of error under a plain error analysis pursuant to Crim.R. 52(B). This rule provides that, "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court ." Notice of plain error, under this rule, is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

We note that for the first time on appeal, appellant refers to the testimony of the five victims as "post-traumatic stress disorder." At no point during the trial was this phrase used in connection with the testimony of these five victims. The five victims testified, as well as their parents, about how this abuse impacted their lives.

Generally, the admission or exclusion of testimony by a lay witness as to opinions or inferences rests within the sound discretion of the trial court and will not be reversed by the reviewing court absent an abuse of discretion. *State v. Sibert* (1994), 98 Ohio App.3d 412, 426, 648 N.E.2d 861. Evid.R. 701 governs opinion testimony by lay witnesses. This rule provides as follows:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

The courts have recognized that when based upon personal observations, a lay witness may testify about another's emotional state, physical condition or sanity. *Id.,* citing *State v. Morris* (1982), 8 Ohio App.3d 12, 455 N.E.2d 1352. In the case *sub judice*, we do not find the admission of this testimony constituted plain error. The victims were permitted to testify regarding how appellant's abuse impacted their lives. Further, the parents of these children also properly testified about the impact of this abuse on the lives of their children. Such testimony helped the jury to determine the credibility of the victims' testimony.

Appellant contends. . . the trial court erred when it permitted hearsay

10

testimony from interviews conducted of two of the victims. We disagree.

Appellant maintains the trial court improperly permitted Stacy Saunders, of the Licking County Department of Job and Family Services, to testify about interviews she conducted with two of the victims. During her testimony, Ms. Saunders testified that both victims identified appellant as the person who molested them. Tr. Vol. III at 643, 646. Appellant argues these statements, by Ms. Saunders, were hearsay and improperly bolstered the credibility of these two witnesses.

The record indicates defense counsel did not object to this portion of Ms. Saunders' testimony. Therefore, we must review this assignment of error under a plain error analysis pursuant to Crim.R. 52(B). This rule provides that, "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error, under this rule, is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Long* at paragraph three of the syllabus.

We find Ms. Saunders' statements were not hearsay pursuant to Evid.R. 801(D)(1)(c), which provides as follows:

"A statement is not hearsay if:

" *(1) Prior statement by witness.* The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification."

In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, modified by *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436 [FN1], the Ohio Supreme Court concluded that under proper circumstances, Evid.R. 801(D)(1)(c) may be used to admit the out-of-court statements of a child declarant identifying a third person, the perpetrator of alleged child abuse. The requirements of Evid.R. 801(D)(1)(c) apply to the facts of the case sub judice.

11

FN1. The modification, by the *Dever* Court, to the *Boston* decision, concerned Evid.R. 803(4).

First, both victims testified, at trial, prior to Ms. Saunders' testimony. See Tr. Vol. III at 577–596 and Tr. Vol. III at 616–629. Both victims described the sexual abuse and identified appellant as the perpetrator. Tr. Vol. III at 580–589 and Tr. Vol. III at 623. Second, both victims were subject to cross-examination concerning the statements. Finally, the statements were one of identification of appellant. Because the statements of Ms. Saunders are not hearsay, the trial court properly admitted these statements. As such, no plain error exists.

Appellant's. . . Assignment of Error is overruled.

Appellant contends. . . the trial court committed err when it admitted, into evidence, irrelevant and inadmissible evidence concerning pornography, a marijuana pipe and a newspaper article dealing with child pornography. We disagree.

Appellant argues the state's repeated references to these items were irrelevant and served only to inflame the passions of the jury. The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Therefore, we will not reverse a trial court's evidentiary ruling unless we find an abuse of discretion. In the case *sub judice*, defense counsel did not object to the admission of this evidence.

Evid.R. 103(A)(1) specifically provides as follows:

"(A) Effect of erroneous ruling

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

" *(1) Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context; * * * "

12

Having failed to object to the admission of this evidence, we conclude appellant waived this issue for purposes of appeal. However, even if we were to address this issue, we conclude the pornography found on appellant's computer was admissible to show appellant's motive, intent, scheme or plan in committing the sexual abuse because this evidence establishes it was gathered and viewed by someone interested in child pornography. *State v. Eichorn,* Morrow App. No. 02 CA 953, at ¶ 33, 2003–Ohio–3415.

As to the marijuana pipe, some of the victims testified about smoking marijuana with appellant. The introduction of the pipe corroborates this testimony. Finally, even if we were to determine the trial court abused its discretion when it admitted into evidence the newspaper article, any error that resulted was harmless.

Appellant's Sixth Assignment of Error is overruled.

*State v. Wagner*, 2004 WL 1672200, at *8-9.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000).

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir.2004), *cert. denied,* 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith,* 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee,* 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).

A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in

13

> determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst, v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw,* 484 F.Supp.2d 753, 771 (N.D. Ohio 2007).  Therefore, petitioner has waived claims four through six for federal habeas corpus review.

In claim ten, Petitioner asserts that he was denied a fair trial because the trial court refused to grant a continuance based on the late appointment of counsel and limited opportunity to review the case.  In claim eleven, Petitioner asserts that he was denied the right to hire an attorney of his own choice when the trial court failed to timely return Petitioner's assets being held in receivership long after the need for receivership had expired.  In claim twelve, Petitioner asserts that he was denied the effective assistance of newly appointed counsel at his re-sentencing hearing.  These claims, being readily apparent from the face of the record, should have been raised on direct appeal, but were not.  Further, Petitioner may now no longer present these claims to the state courts because the State of Ohio has a procedural rule that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732-

14

33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.  Petitioner has waived claims ten through twelve for federal habeas corpus review.       Petitioner may still obtain review of claims four through six and ten through twelve if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations.

15

As cause for his procedural default of claims four through six, and in claim eight of his habeas corpus petition, Petitioner asserts the ineffective assistance of trial counsel. Such a claim may constitute cause for a procedural default, but only if the claim has been presented to the state courts, and is not itself procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 451, (2000) (citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986)).

Here, the state appellate court rejected Petitioner's claim of ineffective assistance of trial counsel in relevant part as follows:

> [A]ppellant maintains he received ineffective assistance of counsel. We disagree.
>
> Appellant claims defense counsel was ineffective because they failed to object to joinder of the three indictments, failed to request severance of the various counts, failed to object to inadmissible hearsay, failed to object to irrelevant evidence, failed to object to prosecutorial misconduct and failed to request disclosure of witness statements after the state's witnesses testified on direct examination.
>
> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
>
> In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.

Further, both the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

As to the joinder and severance issues, defense counsel did object to the joinder of the indictments by challenging joinder at a hearing, before the trial court, on the state's motion to consolidate. Also, defense counsel filed a memorandum opposing joinder of the indictments. Appellant next challenges the performance of defense counsel as it pertains to the issues of inadmissible hearsay, irrelevant evidence and prosecutorial misconduct. However, we have addressed these issues in previous assignments of error and concluded they are not a basis for reversal. Therefore, these issues cannot be the basis for a claim of ineffective assistance of counsel. Finally, witness statements were disclosed, as part of the discovery process, there was no need for defense counsel to request these statements at trial.

Accordingly, we conclude defense counsels' performance was not deficient and appellant was not prejudiced by defense counsels' representation.

*State v. Wagner,* 2004 WL 1672200, at *10-11.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(d).  Further, a federal habeas

court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision.  *Harrington v. Richter*, – U.S. –, –, 131 S.Ct. 770, 786 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel.  *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984).  *See also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result fo the proceedings would have been different.  *Id*., at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of

counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.,* at 697.

Petitioner has failed to meet this standard here.  For the reasons addressed by the state appellate court, none of the errors of which Petitioner complains either amounted to constitutionally unreasonable performance by counsel or prejudiced him, as that term is defined in *Strickland.* Petitioner contends, contrary to the factual finding of the state appellate court, that the prosecutor failed to disclose all prior statements of the witnesses in discovery.  *Supplemental Traverse,* at 28. The state court's factual finding, however, is presumed to be correct and Petitioner's contention is without support.  Thus, Petitioner has failed to meet his burden of rebutting the presumption of correctness afforded the state court's finding of fact.[2]  Petitioner has failed to establish cause for his procedural default of claims four through six.  Claim eight is without merit.

As cause for his procedural default of claims ten through twelve, and in claim thirteen, Petitioner asserts the ineffective assistance of appellate counsel.  The *Strickland* test also applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following

---

[2]  Petitioner argues that his attorney(s) performed in a constitutionally ineffective manner, in any event, because they failed to properly cross examine prosecution witnesses on prior inconsistent statements.  *Supplemental Traverse*, at 28-32.  This claim is likewise procedurally defaulted for the reasons discussed *supra*, because Petitioner failed to raise the claim on direct appeal.

considerations that ought to be taken into account in determining whether counsel on direct appeal

performed reasonably competently:

> A. Were the omitted issues "significant and obvious?"
> B. Was there arguably contrary authority on the omitted issues?
> C. Were the omitted issues clearly stronger than those presented?
> D. Were the omitted issues objected to at trial?
> E. Were the trial court's rulings subject to deference on appeal?
>
> F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> G. What was appellate counsel's level of experience and expertise?
>
> H. Did the petitioner and appellate counsel meet and go over possible issues?
>
> I. Is there evidence that counsel reviewed all the facts?
>
> J. Were the omitted issues dealt with in other assignments of error?
>
> K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.1999).  This list is not exhaustive and need not

produce a certain "score." *Id.* at 428.

Petitioner asserts that he was denied the effective assistance of appellate counsel  because

his attorney failed to raise on appeal from his re-sentencing claims that the trial court improperly

denied him a continuance and denied him the right to counsel of his choice after his privately

retained counsel withdrew and newly appointed counsel requested a continuance to familiarize

himself with the case.  Petitioner also complains that his appellate counsel should have raised on

appeal a claim of ineffective assistance of his appointed trial counsel at his re-sentencing, based on

that counsel's alleged inadequate preparation, failure to make any recommendations or arguments

on Petitioner's behalf and failure to present mitigating evidence.  In this regard. Petitioner represents

that an expert was available for travel from California to present mitigating arguments on

Petitioner's behalf.   Petitioner also contends that prejudice must be presumed under these circumstances.  *See Petition.*

The state appellate court rejected these claims in relevant part as follows:

> In his application, appellant claims his appellate counsel was ineffective for failing to cite as error that the trial court denied him the right to counsel of his own choosing and erred in denying his motion for a continuance of his sentencing hearing.

> The proceeding at issue was a second resentencing [sic][3] hearing. Originally, appellant was sentenced to eighty-nine years in prison. Pursuant to this court's remand for resentencing. . . the trial court again sentenced appellant to eighty-nine years in prison.  After the Supreme Court of Ohio's decision in *State v. Foster*, 109 Ohio St.3d 1. . . appellant's case was again remanded to the trial court for resentencing. . . . Upon remand, the trial court once again sentenced appellant to eighty-nine years in prison.

> Pursuant to appellant's application, his assets were being held in the trust of a court-appointed receiver pending the outcome of a civil case wherein appellant was the defendant.  Appellant's privately retained attorney withdrew.  The trial court declared appellant indigent and appointed him counsel for the second resentencing hearing.  Given the fact that appellant had court-appointed counsel, we note while an accused has a right to counsel, he does not have the right to counsel of his own choosing. . . .

> Newly appointed counsel asked for a continuance, and the trial court denied the request.  Appellant argues prejudice as he had "been in contact with a nationally recognized expert witness who has expressed to the Appellant his willingness to travel from California to Ohio to testify to the court regarding his recommendations for sentencing." Appellant's Application at 9.  Appellant does not offer what information would have been presented to alter the trial court's sentencing determination.  The trial court sentenced appellant to eighty-nine years in prison on three occasions.  There is no basis to conclude that a continuance would have produced information

---

[3]  This appears to be a typographical error, as it was Petitioner's third re-sentencing hearing.

sufficient to sway the trial court to change the sentence.  Appellant has not demonstrated any prejudice.

Upon review, we do not find a genuine issue exists as to whether appellant was deprived of the effective assistance of counsel on appeal.

*Exhibit 34 to Return of Writ.*

The Sixth Amendment right to effective assistance of counsel includes the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, a criminal defendant's right to the attorney of his choice is "circumscribed in several important respects." *United States v. Gonzalez-Lopez,* 548 U.S. at 144 (quoting *Wheat v. United States*, 486 U.S. at 159).

[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. *See Wheat*, 486 U.S., at 159, 108 S.Ct. 1692, 100 L.Ed.2d 140; *Caplin & Drysdale*, 491 U.S., at 624, 626, 109 S.Ct. 2646, 105 L.Ed.2d 528. . .

*United States v. Gonzalez-Lopez*, 548 U.S. at 151-52. A trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness and the demands of its calendar.  *Id.* (citing *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). "The court has, moreover, an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Id. (citing Wheat*, at 159, 486 U.S. 153. Additionally,

[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates

a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney*, 399 U.S. 42, 53-54, 90 S.Ct. 1975, 1982-1983, 26 L.Ed.2d 419 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). The Sixth Amendment does not guarantee the defendant

a "meaningful relationship" with his attorney.  *Id.* at 14.  The denial of a request for a continuance

rises to the level of a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'...." *Morris v. Slappy,* 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)); *see Ungar,* 376 U.S. at 591, 84 S.Ct. 841, 11 L.Ed.2d 921 ("These matters are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances. But the fact that something is arguable does not make it unconstitutional."). The circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process. *Ungar,* 376 U.S. at 589, 84 S.Ct. 841, 11 L.Ed.2d 921 ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Powell v. Collins,* 332 F.3d 376, 396 (6th Cir.2003) ("Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefit[t]ed the defense.").

*Burton v. Renico,* 391 F.3d 764, 772 (6th Cir. 2004).

Petitioner had no right to the appointment of counsel of his choice, because he had been

declared indigent and could not afford to hire his own attorney. Moreover, nothing in the record supports Petitioner's allegation that the trial judge improperly refused to release funds belonging to Petitioner.  As noted by the state appellate court, the record fails to support Petitioner's allegation that  the attorney appointed to represent him at sentence could have provided any information that would have altered the trial court's sentence, had he been able to effect a continuance on Petitioner's behalf.  The record indicates that Petitioner's former attorney withdrew the day before Petitioner's June 27, 2006, sentencing hearing because he had been discharged by Petitioner.  *Sentencing Transcript*, June 27, 2006, at 4.  The trial court denied newly appointed defense attorney's request for a continuance as follows:

> I don't believe there's any purpose for presenting any new evidence for your third resentencing, nor do I see any need for any new presentation to be done of any new evidence at all.  This has only been remanded for the purposes of whether the Court needs to make additional findings on your sentence.  That's all.

*Id.* at 8. "I think you fired your attorney simply for the reason to avoid the proceedings today." *Id.* Susan Smith, with the Salvation Army, spoke on Petitioner's behalf, requesting the trial judge to recommend a treatment program with probation.  She indicated that the Salvation Army would be willing to house and supervise Petitioner.  *Id.* at 13-19.  The trial judge noted that everyone who had an interest in speaking at Petitioner's sentencing hearing had the opportunity to do so at that time and at "at least one or two prior sentencings before," and that he did not "see any need for anybody to repeat themselves."  *Id.* at 20.

In short, Petitioner has failed to establish the ineffective assistance of appellate counsel based on his attorney's failure to raise this issue on appeal.  Claim thirteen is without merit. It follows that Petitioner has failed to establish cause for his procedural default of claims ten through twelve.

Beyond the four-part Maupin analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

Claims four through six, and claims ten through twelve, are procedurally defaulted. Claims eight and thirteen are without merit.

## CLAIM ONE

In claim one, Petitioner asserts that he was denied a fair trial because the trial court refused to continue the trial when one of his attorneys became unavailable due to illness. The state appellate court rejected this claim, reasoning as follows:

> [A]ppellant maintains the trial court abused its discretion when it denied his request for a continuance. We disagree.

> On the morning of trial, Attorney Blaise Baker requested a continuance due to his co-counsel, Attorney Todd Drown's illness. Attorney Baker provided the trial court with a letter from Attorney Drown's physician that described Attorney Drown's treatment and prognosis. The letter also indicated Attorney Drown should not work for a period of two to four weeks.

> The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

> In determining whether a trial court abused its discretion in denying a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether

25

other continuances have been requested and received; (3) the inconveniences to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and other relevant factors, depending on the unique facts of each case. *Unger* at 67–68, 423 N.E.2d 1078.

Appellant claims the trial court abused its discretion when it denied his request for a continuance for the following reasons. First, appellant did not seek a lengthy delay of the proceedings. Second, appellant had not previously sought an unreasonable number of continuances from the trial court. Third, there is no indication that rescheduling the trial would have presented a substantial inconvenience to the litigants, witnesses or opposing counsel. Fourth, appellant's request for a continuance was for a legitimate reason. Fifth, appellant did not contribute to the circumstances that gave rise to the request for a continuance. Sixth, a continuance was necessary because Attorney Drown prepared the areas of the case involving forensic computer analysis, DNA analysis and defense character witnesses.

In denying the motion for a continuance, the trial court noted that it delayed the trial a day in order to accommodate Attorney Drown and had previously granted two continuances, in this matter, at the defense's request. Tr. Vol. I at 33, 35–36. The trial court also noted that the letter from Attorney Drown's physician was not dated. *Id.* at 36, 423 N.E.2d 1078. Further, Attorney Drown's assistant was present, in the courtroom, and would be able to assist Attorney Baker. *Id.* at 37, 423 N.E.2d 1078.

On appeal, appellant has not established that he was prejudiced by Attorney Drown's absence. In fact, Attorney Drown appeared, on the third day of trial, and fully participated in the portions of the case that he prepared. Upon consideration of the factors contained in *Unger,* we do not find the trial court abused its discretion when it denied appellant's motion. Although Attorney Drown's illness may have been a legitimate reason for a request for a continuance, other factors supported the trial court's decision. First, Attorney Baker did not indicate the length of the delay requested. Second, defense counsel previously requested and received two continuances. Third, and most importantly, due to the number of victims and witnesses involved in this case, continuing and rescheduling this matter for trial would have been inconvenient.

*State v. Wagner*, 2004 WL 1672200, at *3.

> Denial of a continuance rises to the level of a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'...."

*Hodge v. Haeberlin*, 2006 WL 1895526 at *50 (E.D. Ky. July 10, 2002)(quoting *Morris v. Slappy*, 461 U.S. at 11-12 (quoting *Ungar v. Sarafite* 376 U.S. 575, 589 (1964)). Such were not the circumstances here. "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. at 589 (citations omitted).

Petitioner argues that Attorney Drown had played "an extensive role" in preparing his defense but that, due to illness, this attorney did not appear until the fourth day of trial,[4] at which time he appeared to be in poor health and was unable to adequately participate in trial proceedings. *Supplemental Traverse*, at 19. According to Petitioner, co-counsel Baker was not prepared to assume sole representation of Petitioner and therefore performed in a constitutionally unreasonable manner throughout trial. *Id.* at 21. Petitioner specifically complains that Mr. Baker failed to object to certain jurors, failed to properly cross examine prosecution witnesses, stumbled in his speech and confused the names and testimony of the alleged victims, failed to cross examine alleged victims on their prior inconsistent statements and failed to introduce defense exhibits. *Supplemental Traverse*, at 21-22. Petitioner also complains that neither of his attorneys assured that the trial court

---

[4]The state appellate court found that "Attorney Drown appears on the third day of trial . . . ." *State v. Wagner*, 2004 WL 1672200, at *3. The trial transcript, however, indicates that trial began on July 8, 2003, *Trial Transcript*, at 39, and Mr. Drown appeared on July 11, 2003, *id.* at 672. The jury returned the verdicts on July 17, 2003, *id.*, at 1291.

had received all the medical records of the alleged victims for *in camera* inspection.  *Id.* at 22.

According to the *Trial Transcript*, Petitioner initially retained Mr. Baker as lead counsel, and Mr. Drown later became involved as co-counsel.  *Trial Transcript*, at 31.  The attorneys divided their work on the case: ". . . Mr. Drown was and has done all the work on the computer issues involved, the DNA, and the work on the children and parents as character witnesses." *Id.* at 27.  Mr. Baker had " a couple of weeks" notice that Mr. Drown was ill, *id.*, at 26, and the trial was delayed by one day to accommodate Mr. Drown.  *Id.* at 35-36. The record fails to support Petitioner's contention that any jurors expressed bias or indicated that they could not be fair and impartial.  *Trial Transcript,* at 41-129.  The record also fails to support Petitioner's allegation that either of his attorneys performed in a constitutionally unreasonable manner.  Petitioner fails to refer to any specific portion of the *Trial Transcript* in which Mr. Drown was confused or was unable to properly articulate his words and this Court has been able to locate any such instances.  Petitioner does not suggest any deficiencies in the cross examination of witnesses that rise to the level of constitutional ineffectiveness.  Similarly, Petitioner does not identify any exhibits that were not, to his prejudice, entered into the record.

For the reasons addressed by the state appellate court, and considering the totality of the circumstances, this Court is not persuaded that the trial court's refusal to grant the requested continuance violated Petitioner's constitutional rights.

Claim one is without merit.

## CLAIM TWO

In claim two, Petitioner asserts that he was denied a fair trial because the trial court refused his request for state funds to hire a child psychologist to assist him in preparation of his defense.

The state appellate court rejected this claim as follows:

> Appellant contends, in his Second Assignment of Error, the trial court abused its discretion when it denied his request, for state funds, to hire a child psychologist. We disagree.
>
> The trial court denied appellant's request for funds, for a child psychologist, and stated on the record:
>
>> "The Court would find, based upon the representations of the State, that they're going to call these witnesses to testify on direct and be subject to cross, and that they are not going to attempt to use exception under the hearsay rule, that is, statements that the victims might have made to social workers, investigating officers or anyone else, that there's not a basis to hire such an expert, so we'll overrule their request for that." Tr. Suppression Hrng., Mar. 27, 2003, at 65.
>
> Appellant claims he needed the assistance of a child psychologist in order to introduce the proffered theory of contagion. We conclude the trial court did not abuse its discretion when it denied appellant's request as appellant is not indigent and therefore, was not entitled to state funds. Although the trial court provided funds for a DNA expert, a medical doctor and a computer expert, it did so as a loan until appellant could liquidate some of his assets to pay for these services. Clearly, appellant had the means to hire a child psychologist had he believed it necessary to do so. Appellant is not indigent and therefore, is not entitled to state funds.

*State v. Wagner*, 2004 WL 1672200, at *3-4.

Petitioner argues that the state appellate court erred in finding that he was not indigent as a basis for affirming the trial court's denial of his request for funds. He refers to the hearing on his motion to suppress, during which the trial court apparently granted Petitioner's request for funds to hire a DNA expert, a doctor to examine the reports of the physical examinations of the alleged victims and an expert in computers to assist defense counsel in reviewing the anticipated testimony of the state's computer expert. *See Supplemental Traverse*, at 6-7 (quoting *Transcript of*

*Suppression Hearing*, at 63-64).[5]  The trial court apparently acknowledged that Petitioner's assets, which consisted of real estate, were not liquid.  Noting that a trial date already had been set, the trial court found "for the purposes of hiring the experts at this point in time that the defendant is indigent." *See id.,* at 6. The funds were not to be expended, however, until Petitioner granted a lien against his real estate to the county.  *Id*., at 7.  *See also Appellant's Brief, Exhibit 9 to Return of Writ*, at 7.  Under these circumstances, this Court is not persuaded that Petitioner has met his burden of rebutting the presumption of correctness accorded to the state appellate court's factual finding that Petitioner was not indigent at the time he requested funds to hire a child psychologist to assist him in preparing his defense.

In any event, this Court is not persuaded that the state appellate court's decision denying Petitioner's claim in this regard was contrary to or an unreasonable application of federal law, as defined by the United States Supreme Court. In *Ake v. Oklahoma*, 477 U.S. 77 (1985), the United States Supreme Court held that, where a criminal defendant establishes that sanity will be a significant factor at trial, he is entitled to a court-appointed psychiatrist free of cost to assist him in his defense.  *Id*. at 83.  The Supreme Court has not, however, addressed a criminal defendant's right to the appointment of expert witnesses beyond this narrow holding.  *See Caldwell v. Mississippi,* 472 U.S. 320, 323 n.1 (1985)(declining to determine what, if any, showing would be required for a criminal defendant seeking expert assistance at court expense ).  Further, those federal courts that have considered the issue disagree as to whether *Ake* requires the state to provide a criminal defendant services of experts other than psychiatric experts necessary to present an insanity defense. *See Kittrell v. Davis*, 2010 WL 4539458, at *15 (E.D. Mich. Nov. 3, 2010).  "Under the AEDPA.

---

[5]The complete transcript of the suppression hearing has not been made part of the record before this Court.

. . the question is not whether. . . the United States Court of Appeals for the Sixth Circuit, would extend *Ake* to require the provision of non-psychiatric experts. Rather, the question is whether *Ake* clearly establishes Petitioner's right to the appointment" of the expert sought.  Because the Supreme Court has never held that a non-indigent criminal defendant is entitled to the assistance of a court appointed expert witness, this Court is not persuaded that the state appellate court's decision denying Petitioner's claim was contrary to or an unreasonable application of federal law, as defined by the United States Supreme Court.

Moreover, Petitioner has failed to establish that he was prejudiced by the trial court's ruling in this regard.   Nothing in the record indicates that a child psychologist would have provided exculpatory evidence for the defense.  Petitioner's "[c]onclusory allegations, without evidentiary support, do not provide a basis for habeas relief."  *See Kittrell v. Davis*, 2010 WL 4539458, at *16 (citations omitted).

Claim two is without merit.

## CLAIM THREE

In claim three, Petitioner asserts that he was denied a fair trial because the trial court consolidated all charges against him for trial.  The state appellate court rejected this claim as follows:

> Appellant maintains, in his Third Assignment of Error, the trial court committed plain error when it consolidated all of the indictments for trial. We disagree.
>
> In its judgment entry granting the state's motion to consolidate, the trial court stated:

"Pursuant to Crim.R. 8 these cases could have been indicted together as they 'are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.' Additionally, Crim.R. 13, allows the court to order two or more indictments to be tried together, if the offense could have been joined in a single indictment.

"Factually, some of the victims in the older cases and evidence necessary in the above captioned case will be admissible in the older cases." (Emphasis sic.) Judgment Entry, Mar. 14, 2003, at 1.

Appellant contends the trial court erred when it consolidated the indictments because the evidence presented by the state varied with respect to each alleged victim. Some of the victims were pictured in photographs taken from appellant, while other victims suffered some degree of physical trauma. Further, for other victims, there was no corroborating evidence. Thus, appellant concludes that if the jury was convinced, beyond a reasonable doubt, that he was guilty of one count, the finding of guilt as to one count likely influenced the jury's decision on the remaining counts.

Therefore, appellant maintains that even if the trial court properly joined these indictments, severance was necessary to avoid prejudice. Appellant argues the jury was able to use the accumulated evidence to convict him on counts that were factually deficient. Further, appellant maintains the consolidated trial prejudiced his rights and hindered his ability to testify on his own behalf because if he testified in one case, he would be subject to cross-examination in the other case.

Crim.R. 13 permits joinder and provides, in pertinent part, as follows:

"The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information." * * *

"Joinder is liberally permitted to conserve judicial resources, reduce

the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim,* 65 Ohio St.3d 51, 58, 600 N.E.2d 661, 1992–Ohio–31. Crim.R. 14 permits a defendant to sever the charges if consolidation will result in prejudice. This rule provides as follows:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses * * *, in an indictment, * * * or by such joinder for trial together of indictments, * * *, the court shall order an election or separate trial of counts, * * *, or provide such other relief as justice requires. * * * "

On appeal, in order to prevail on a claim that the trial court erred in denying a motion to sever, appellant has the burden of demonstrating the following three facts: (1) that his rights were prejudiced; (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial; and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial. *Id.* at 59, 600 N.E.2d 661, citing *State v. Torres* (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288, syllabus.

In determining whether appellant was prejudiced by joinder of multiple offenses, we must determine (1) whether evidence of the other crimes would be admissible, even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. *Id.,* citing *State v. Hamblin* (1988), 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476, reversed on other grounds, (C.A.6 Ohio), 354 F.3d 482. "If the evidence of other crimes would be admissible at separate trials, any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trial,' and a court need not inquire further." *Id.,* citing *Drew v. United States* (C.A.D.C.1964), 331 F.2d 85, 90.

Thus, our first inquiry is the extent to which evidence of each of these crimes would be admissible in the other trials if the counts were severed. The admission of other-acts evidence is governed by Evid.R. 404(B). Evid.R. 404(B) provides that evidence of other-acts " * * * may * * * be admissible for * * * purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence

of mistake or accident.

Other-acts evidence is admissible only if " 'there is substantial proof that the alleged other acts were committed by the defendant' *and* such evidence tends to show one of the matters enumerated in Evid.R. 404(B). (Emphasis sic.) *State v. Echols* (1998), 128 Ohio App.3d 677, 692, 716 N.E.2d 728, citing *State v. Lowe,* 69 Ohio St.3d 527, 530, 634 N.E.2d 616, 1994–Ohio–345. In order for other-acts evidence to be admitted, both prongs must be satisfied. *Echols* at 692, 716 N.E.2d 728. Failure to meet one prong defeats the use of such evidence. *Id.*

The first prong, identity, i.e. whether appellant committed the other acts, may be used to prove identity in two situations. The first situation is where the other acts are inextricably interwoven or related to the alleged criminal act. *Id.* at 692–693, 716 N.E.2d 728. The second situation is where the other-acts involve a unique identifiable plan of criminal activity so as to establish a modus operandi or behavioral fingerprint. *Id.* at 693, 716 N.E.2d 728.

We have reviewed the evidence in this case and conclude the joined offenses share significant common features sufficient to establish a modus operandi that identify appellant as the perpetrator. Appellant preyed upon young boys. The victims' testimony established the offenses were part of a common scheme whereby appellant seduced and victimized the boys over a period of time. Appellant would gain the trust of the boys, introduce sexuality into the trust and engage the victims in sexual activity. All of the victims described how appellant sought continued trust and contact with them, after the initial victimization, by engaging in a plan to keep the victims coming back to him at his home.

The other-acts evidence also tended to show one of the matters enumerated in Evid.R. 404(B). Clearly, the manner by which appellant gained the victims' trust established proof of motive, opportunity, intent, preparation, plan, knowledge and identity. Because there was substantial proof that the other-acts were committed by appellant and such evidence established at least one of the grounds enumerated in Evid.R. 404(B), we conclude appellant was not prejudiced by the trial court's joinder of the three indictments. Having failed to establish the first prong needed to prove the trial court erred by joining the indictments, we will not address

34

the remaining two prongs.

Finally, we note that, "[t]he mere possibility that the defendant might have a better choice of trial tactics if the counts are separated, or the mere possibility that he might desire to testify on one count and not on the other, is insubstantial and speculative; it is not sufficient to show prejudice." [Citation omitted.] *Torres* at 344, 421 N.E.2d 1288.

Appellant's. . . Assignment of Error is overruled.

*State v. Wagner*, 2004 WL 1672200, at *4-6.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir.1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.1983). Such are not the circumstances here.

Where a defendant alleges that a denial of due process due to the trial court's refusal to grant a severance of charges against him, he

must show that the misjoinder rendered the trial fundamentally unfair. *Hollands v. Department of Corrections,* 969 F.2d 606 (8 Cir.1992); *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) as cited in *United States v. Chavis,* 296 F.3d 450 (6 Cir.2002). Thus, misjoinder reaches constitutional dimensions only if it makes a state trial unfairly violative of due process. *Herring v. Meachum,* 11 F.3d 374 (2d Cir.1993).

A claimant must show more than the potential for prejudice; he must prove that actual prejudice occurred at trial. *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Thus, Petitioner has no relief under 28 U.S.C. § 2254 unless the consolidation actually rendered the Petitioner's state trial fundamentally unfair and violative of due process. *Tribbitt v. Wainwright,* 540 F.2d 840 (5 Cir.1976), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977); *Lucero v. Kerby,* 133 F.3d 1299 (10 Cir.1998); *Robinson v. Wyrick,*

35

> 738 F.2d 1091 (8 Cir.1984). The granting or denying of severance is within the trial judge's discretion. *Glinsey v. Parker,* 491 F.2d 337 (6 Cir.1974).

*Dowell v. Eckman,* (unpublished), 2006 WL 228933 (W.D.Ky. January 25, 2006). Similarly, Petitioner in this case has failed to establish that the trial court's ruling constituted an error of constitutional dimension.  Even if the trial court had granted a severance of the charges against Petitioner, evidence regarding each of the alleged victims would have been admissible at trial.  Petitioner has therefore failed to establish prejudice.  For this reason, and for the reasons articulated by the state courts, this Court concludes that Petitioner's claim three is without merit.

### CLAIM SEVEN

In claim seven, Petitioner asserts that he was denied a fair trial due to prosecutorial misconduct, based on improper statements in closing arguments.  The state appellate court rejected this claim as follows:

> [A]ppellant maintains the prosecutor's comments during closing arguments constituted prosecutorial misconduct and deprived him of a fair trial. We disagree.

> Specifically, appellant challenges the following statement made during the rebuttal portion of the prosecutor's closing argument:

> "Defense counsel makes an argument that the defendant didn't run when he found out he wasn't (sic) being investigated, he stuck around. The defendant knew he was being investigated about two boys, * * *, and there were allegations of touching over the clothing. He didn't know the full extent of the investigation until the police came knocking on his door on September 6, 2002. There was no evidence presented to you, that I can recall, regarding Interpol or F.B.I. There's no absolutely no evidence before you showing how ma[n]y children have ever made allegations against this defendant. Tr. Vol. VII at 1242–1243.

36

Appellant argues the above comment did not relate to any facts in evidence, was not relevant to any of the charges and left jurors with an inference that appellant was the target of federal and international investigations.

In addressing a claim for prosecutorial misconduct, we must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. Treesh,* 90 Ohio St.3d 460, 464, 739 N.E.2d 749, 2001–Ohio–4.

We conclude the prosecutor's conduct was not improper in the case *sub judice.* The record establishes the prosecutor made this comment, in response to defense counsel's closing argument, wherein counsel stated:

"Ladies and gentlemen, what are the chances, what are the chances, the odds, that the only victims that Scott Wagner had are members of the same basic group? Nowhere else, nowhere else in—in Ohio, nowhere else around here, nowhere else in Columbus where he works, we know he didn't do anything else because we have Interpol having checked him out. We have the F.B.I. having checked him out. We have record checks. Nowhere else except this isolated little pocket of friends and relatives that have been abused. No allegations, nothing, except right there. Tr. Vol. VII at 1231.

Clearly, the prosecutor's comment, made during the rebuttal portion of closing argument, was merely a response to defense counsel's comment concerning the scope of the investigation. Defense counsel attempted to place doubt, in the mind of the jurors, by questioning why there was only this one area where appellant abused the children. The prosecutor, on rebuttal, reminded the jurors that there was no evidence presented concerning any investigations by Interpol or the F.B.I. As such, we conclude the prosecutor's comment was not improper.

*State v. Wagner*, 2004 WL 1672200, at *9-10.

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow. A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary trial error in cases before it for habeas review. *Donnell v. De Christoforo* 416 U.S. 637 (1974). Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny the petitioner fundamental fairness. *Id.* at 642-43; *Martin v. Foltz,* 773 F.2d 711, 716-17 (6th Cir.1985); *Angel v. Overberg,* 682 F.2d 605, 607 (6th Cir.1982)( *en banc* ). This determination is made by evaluating the totality of the circumstances surrounding the case. *Angel v. Overberg,* 682 F.2d at 607.

> Factors relevant in making this inquiry are: the degree to which the remarks may tend to mislead the jury and to prejudice the accused; whether the remarks were isolated or extensive; whether they were deliberately placed before the jury; and the strength of the case against the accused. Finally, this Court notes the "extreme nature of the prosecutorial misconduct required for a federal court to issue the writ."

*Martin v. Foltz,* 773 F.2d at 716 (citations omitted)(quoting *Cook v. Bordenkircher,* 602 F.2d 117, 120 (6th Cir.1979).

Petitioner has failed to establish that the prosecutor's statements complained of were of such extreme nature so as to warrant federal habeas corpus relief. Contrary to Petitioner's argument here, *see Supplemental Traverse*, and for reasons addressed by the state appellate court, this Court agrees that the prosecutor's statements, made in response to the argument of defense counsel, were not improper. Petitioner has failed to establish that he was prejudiced by the prosecutor's statements complained of, or that the remarks were of such an egregious nature in light of the evidence presented, that the state appellate court's decision rejecting his claim was contrary to or an

unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

## CLAIM NINE

In claim nine, Petitioner asserts that his sentence, imposed after the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1 (2006),[6] violated the *Blakely v. Washington*, 542 U.S. 296 (2004) and the *Ex Post Facto* Clause.  The state appellate court rejected this claim as follows:

> Appellant claims the trial court's sentence was unconstitutional because the imposition of consecutive sentences involved fact finding which was not made by a jury of his peers. We disagree.

> In support of his argument, appellant cites the case of *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. In *Foster*, the Supreme Court of Ohio conducted a comprehensive review of Ohio's criminal sentencing statutes and held the following at paragraph three of the syllabus: "Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional." However, the *Foster* court held the following at paragraph four of the syllabus: "R.C. 2929.14(E)(4) and 2929.41(A) are capable of being severed. After the severance, judicial fact-finding is not required before imposition of consecutive prison terms."

> In *State v. Mooney*, Stark App. No.2005CA00304, 2006-Ohio-6014, ¶ 63, this court held the following:

> "[W]e conclude that post- *Foster* [ *State v. Foster*, 109 Ohio St.3d 1], this Court reviews the imposition of consecutive sentences under an abuse of discretion standard. Furthermore, when applying the abuse of discretion standard, an appellate court may not generally substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621." [FN1]

---

[6]  In *Foster*, the Ohio Supreme Court excised fact finding provisions of Ohio's sentencing statutes as unconstitutional in view of *Blakely*.

FN1. This writer notes the *Mooney* case, authored by the Honorable W. Scott Gwin, contains a thorough examination and analysis of consecutive sentencing before and after *Foster*. See also, *State v. Firouzmandi,* Licking App. No 2006-CA-41, 2006-Ohio-5823.

In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217.

By judgment entry filed June 29, 2006, the trial court sentenced appellant to an aggregate term of eighty-nine years in prison. As stated in *Foster* at paragraph seven of the syllabus: "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."

Appellant was found guilty of numerous counts of rape, gross sexual imposition, unlawful sexual conduct with a minor, pandering sexually oriented matter involving a minor, illegal use of a minor in nudity-oriented material or performance, and corruption of a minor. The trial court sentenced appellant within the statutory range on each count. See, R.C. 2929.14(A)(1)-(5).

In its sentencing entry filed June 29, 2006, the trial court noted it "considered the record, oral statements, and the Presentence Investigation prepared, the testimony presented at the sexual classification hearing, as well as the principles and purposes of sentencing under O.R.C. Section 2929.11, and has balanced the seriousness and recidivism factors under O.R.C. Section 2929.12(B)-(E)."

The trial court noted the counts involved eleven different victims of "similar ages, gender and social and economic background." The trial court found appellant used:

"Big Brothers/Big Sisters as a means to meet his first victim and its use as a credential for future victims and similar integration with all the victims here, and that is the winning of their trust through

> activities involving camping, four-wheeling, or other actions that would attract a juvenile's attention, then introducing them to pornography, masturbation, fellatio and then anal intercourse."
>
> As a result of these crimes, the victims experienced "poor grades, unruly behavior, nightmares, attempted suicides," and affected their mental health as well as their parents and families.
>
> "In the case at bar, there is no evidence in the record that the judge acted unreasonably by, for example, selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent factors, or giving an unreasonable amount of weight to any pertinent factor." *Mooney,* at ¶ 68.
>
> Upon review, we find the trial court's sentence was not unconstitutional, and the trial court did not abuse its discretion in sentencing appellant to consecutive sentences.

*State v. Wagner*, 2008 WL 5257223, at *1-3. This Court agrees that Petitioner has failed to establish that his sentence was unconstitutionally imposed.

In *Hooks v. Sheets,* 603 F.3d 316 (6th Cir. 2010), the United States Court of Appeals for the Sixth Circuit rejected the same argument presented by Petitioner, as it applies to imposition of consecutive terms of incarceration. Moreover, Petitioner's argument has been repeatedly rejected by state and federal courts. As noted by another judge of this Court:

> Petitioner's claim that the retroactive application of the *Foster* remedy to correct constitutional infirmities in Ohio's sentencing statutes constitutes a violation of the Constitution's Ex Post Facto and Due Process Clauses has been thoroughly discussed and uniformly rejected by this Court and other federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets,* No. 1:07cv520, 2008 WL 4533693, at *3–5, *13–19 (S.D. Ohio Oct.3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases cited therein); *see also Wright v. Warden, Pickaway Corr. Inst.,* —— F.Supp.2d ——, No. 1:07cv1022, 2009 WL 1850170, at *1, *23–25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be published) (and cases cited and quoted therein);

41

*Kelley v. Brunsman,* ——F.Supp.2d ——, No. 1:08cv71, 2009 WL 1617774, at *5–6, *17–18 (S.D. Ohio June 9, 2009) (Spiegel, J.; Hogan, M.J.) (to be published); *Smith v. Brunsman,* —— F.Supp.2d ——, No. 1:07cv878, 2009 WL 530113, at *1, *4–8 (S.D. Ohio Feb.27, 2009) (Barrett, J.; Black, M.J.) (to be published) (noting that "both the federal district courts and Ohio courts have rejected ex post facto challenges to the *Foster* decision").[FN6]

FN6. *See also Rettig v. Jefferys,* 557 F.Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject [ing] ex post facto challenges to the *Foster* decision"); *Smith v. Welch,* No. 3:08cv2917, 2009 WL 2167863, at *1–3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.; Perelman, M.J.) (unpublished); *Mason v. Brunsman,* No. 1:07cv1020, 2009 WL 2169035, at *8–9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe,* No. 2:08cv144, 2009 WL 1424427, at *1–6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper,* No. 2:08cv195, 2009 WL 1324046, at *1, *16–19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson,* No. 5:08cv483, 2009 WL 1212262, at *1, *11–12 (N.D. Ohio Apr.30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman,* No. 2:07cv981, 2009 WL 614963, at *1, *10–13 (S.D. Ohio Mar.5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe,* No. 2:07cv1093, 2009 WL 541156, at *1, *3–5 (S.D. Ohio Feb.27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein). *Cf. Turner v. Warden, Noble Corr. Inst.,* No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar.31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected ex post facto challenges to the *Foster* decision"); *Collins v. Warden,* Chillicothe Corr. Inst., No. 3:06cv256, 2008 WL 728390, at *1, *8–9 (S.D. Ohio Mar.17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely,* his new sentence [under the *Booker* remedy adopted in *Foster* ] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

*Dickens v. Brunsman*, No. 1:08cv430, 2009 WL 3199066 (S.D. Ohio Sept.29, 2009).  This Court

agrees with the reasoning of this decision and of those courts that have considered this issue, and concludes that the retroactive remedy created by *Foster* does not constitute a violation of the ex post facto or due process provisions of the Constitution.

Moreover, the United States Supreme Court held in *Oregon v. Ice*, 555 U.S. 160 (2009), that judicial fact finding in connection with the imposition of consecutive sentences is not constitutionally prohibited.

Claim nine is without merit.

**WHEREUPON** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Specifically, it is **RECOMMENDED** that claims four through six and claims ten through twelve be dismissed as procedurally defaulted and that all other claims be dismissed as without merit Petitioner's request for an evidentiary hearing is **DENIED.**

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court

adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                    *s/ Norah McCann King*
                                    Norah McCann King
May 22, 2012                        United States Magistrate Judge

44